# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 01 CR 348 |
| ) | |
| MICHAEL SPANO, SR., JOHN LAGIGLIO, ) | |
| BETTY LOREN-MALTESE, EMIL SCHULLO, ) | |
| MICHAEL SPANO, JR., BONNIE LAGIGLIO, ) | |
| and CHARLES SCHNEIDER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**
*(Regarding the Marano Claimants)*

The remaining issues regarding distribution of the golf course sale proceeds involve the claims of the Maranos, the Town of Cicero and the United States.[1] We will first address the issues raised between the government and the Maranos ("Marano") and then the arguments between Marano and the Town of Cicero ("Town").

**The Government vs. Marano**

Marano has a $450,000 purchase money mortgage on the golf course property, secured by a note in that amount bearing 10% interest per year. Installment payments were to be $27,025.69 per month. The mortgagor, Plaza Partners ("Plaza"), made eight

---

[1] The government relinquishes any claim of its own and agrees that any proceeds not distributed to the Maranos should be distributed to the Town of Cicero.

payments in that exact amount and three additional payments in the amount of $30,000 each, all on the monthly schedule called for in the note.

In addition to the mortgage note, Plaza gave two unsecured notes to Marano for $200,000 and $100,000. These notes provide for 10% interest but set no due dates and provide for no monthly payments. Marano argues that under the "creditor's choice doctrine," he should be permitted to apply some of the Plaza payments to these unsecured notes rather than to the mortgage note. The result would be that the amount owing to Marano on the mortgage note, and payable out of the sale proceeds, would be considerably higher than if all payments made by Plaza were applied to the mortgage note.

We agree with the government that the payments of $27,025.69 were obviously intended by Plaza, and accepted by Marano, as payments on the mortgage debt. The $30,000 payments were also made on the schedule provided for in the mortgage note, and, as the government points out, were not made <u>in addition</u> to the scheduled monthly payments. We have no explanation for why these payments were $30,000 rather than $27,025.69, but this difference in amount does not rebut the inference that they were intended to apply to the mortgage note. Moreover, and importantly, Anthony Marano testified at trial that <u>all</u> of the checks made payable to Marano by

Plaza and SRC were payments on the $450,000 golf course loan.[2] This is our view as well, and we will apply all payments to the mortgage note.[3]

The next issue between the government and Marano has to do with whether interest on the mortgage note should be simple or compound. We think the government has the better of the argument on this as well. Compound interest is not favored in the law, and there is no reason to allow it here, especially when the effect would be to further diminish any share that will go to the Town. We will allow only simple interest.

We agree with the government's argument that Marano is not entitled to "late fees," which are prohibited by 28 C.F.R. § 9.2(k).

The government agrees that Marano should receive his reasonable attorneys fees, taxes paid and insurance costs. These will be allowed, and apparently there is no disagreement as to the amounts.

## Marano vs. Town of Cicero

The Town of Cicero argues that Marano should not receive any sale proceeds which were generated by improvements on the property

---

[2] See excerpt of testimony quoted in Government's Reply Brief of February 9, 2005, at 6.

[3] In his surreply brief of April 15, 2005, at 6, Marano concedes that the four payments made by SRC, totaling $35,000, are properly applied to the mortgage note.

made with money stolen from the Town in the insurance fraud scheme. The parties have briefed the issue at some length and, after thoroughly considering the arguments, we believe the Town's position must be rejected.

There is no evidence that Marano knew money of the Town was being used to make improvements on the property. If Marano had known, then it could be argued that he does not qualify as a bona fide purchaser of the improvements pursuant to 18 U.S.C. § 1963(l)(6)(B). But that is not this case.

Marano's mortgage conveys to the Mortgagee the described real estate "together with all '... buildings and improvements now or hereafter located thereon ... [and] all fixtures now or hereafter attached to or used in connection therewith.'" (Ex. 1, Marano Br. of December 10, 2004 in Opposition to the Government's Memorandum, at 1.) We assume such a provision is customary, since it merely states the law:

> A mortgagor or other person making improvements on land subject to mortgage, does so for the benefit of the mortgagee....

Powell v. Rogers, 11 Ill. App. 98, 1882 WL 10566, at *4 (Ill. App. Ct. 1882), aff'd, 105 Ill. 318 (Ill. 1883) (citations omitted).

The Town argues that Marano's interest should be fixed as of the date of his mortgage, so that the improvements in question were in fact not taken from him (but rather from the Town) in the RICO forfeiture. But we are unable to reconcile that theory with the

law, and with the provision of the mortgage itself, that gives the mortgagee the benefit of later improvements made to the property. And Marano is clearly entitled to have his interest valued as of the date of the forfeiture. See Olson v. United States, 292 U.S. 246, 254-56 (1934); Shelden v. United States, 7 F.3d 1022, 1029-30 (Fed. Cir. 1993).

Marano points out another problem with the Town's position. We are dealing with the disposition of mortgage sale proceeds. The property was sold at auction. It would be impossible to determine what portion of the sales price was based upon the value of any particular improvements to the property, let alone any improvements paid for by money stolen from the Town. It could be nothing more than speculation.

For these reasons, we hold that Marano is entitled to assert his claim against the sales price brought by the improved property, including all improvements made subsequent to his mortgage.

## Conclusion

It appears that we are now ready to enter a final order of distribution. Counsel for the parties are requested to cooperate in preparing an appropriate order consistent with this opinion.

DATE: July 27, 2005

ENTER: _____
John F. Grady, United States District Judge